**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**CATHY J. BOWLES**                                                                            **PLAINTIFF**

**VS.**                                 **CIVIL ACTION NO. 3:18-CV-27-WHB-JCG**

**ONEMAIN FINANCIAL GROUP, LLC**                                  **DEFENDANT**

---

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS AND TO COMPEL ARBITRATION**

---

Defendant, OneMain Financial Group, LLC ("Defendant" or "OneMain") submits this memorandum of law in support of its motion to dismiss this action with prejudice in its entirety, and compel arbitration of all of Plaintiff's claims asserted in her Complaint under the Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA") in accordance with the terms of the arbitration agreement between the parties.

**INTRODUCTION**

This case concerns the termination of Plaintiff, Cathy J. Bowles employment as a Branch Manager on October 6, 2017 after she had been counseled and disciplined concerning her inappropriate interaction with the employees she supervised. Thereafter, Bowles filed her charge of discrimination and this lawsuit, asserting claims that she was discriminated against because of her age under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.,* as amended and because she participated in religious activities in her workplace in violation of Title VII of the Civil Rights Act of 1964. *(Complaint, Doc. 1, ¶¶ 6, 9.)* In addition, Bowles alleges a claim for intentional infliction of emotional distress. *(Complaint, Doc. 1, ¶12.)*

OneMain maintains an Employee Dispute Resolution Program ("EDR"). *(Employee Dispute Resolution Program, attached as Att. A-1 to Declaration of Deborah Fleck, attached as*

*Exhibit "A."*) Throughout her employment, Plaintiff acknowledged and agreed to OneMain's EDR, which requires her to submit this dispute to binding arbitration. (*Declaration of John Clotworthy, Ex. "B."*) Most recently, on November 15, 2016, Plaintiff electronically signed and agreed to comply with all aspects of the Employee Dispute Resolution Program. *(Declaration of Stephen F. Oberlie, Ex. "C."*)

OneMain's dispute resolution procedure requires both OneMain and its employees to submit covered disputes to binding arbitration. *(EDR, Att. "A-1 to Fleck Decl.).* Despite the parties' mutual agreement to arbitrate the claims at issue in this action, Plaintiff has refused to submit her claims to arbitration and instead pursued her claims in this action. OneMain now moves the Court for an order (i) compelling Plaintiff to honor her written agreement to arbitrate and dismissing the Complaint; or, in the alternative, (ii) staying these proceedings.

## STATEMENT OF RELEVANT FACTS

### I. ONEMAIN'S PRIVATE DISPUTE RESOLUTION PROCEDURE

OneMain enforces a progressive private dispute resolution procedure designed to promote internal settlement of any employment claim or controversy. *(EDR, Att. "A-1 to Fleck Decl.)* The dispute resolution procedure applicable here is entitled "Employment Dispute Resolution" (hereinafter "EDR"). (*Id.*)

The EDR is "mandatory" and applies to disputes "arising out of or related to . . . termination, retaliation, discrimination or harassment…" (*Id. at p. 2).* In particular, Plaintiff agreed that:

> Except as it otherwise provides, this Agreement is intended to apply to the resolution of past, present or future disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. Except as otherwise stated in this Agreement, **you and the Company agree that any legal dispute or controversy covered by this Agreement, or arising out of, relating to, or concerning the validity, enforceability or breach**

2

> **of this Agreement, shall be resolved by final and binding arbitration in accordance with the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association ("AAA Rules") then in effect, and not by court or jury trial**, to be held (unless the parties agree in writing otherwise) within 45 miles of where you are or were last employed by the Company.

(EDR, ¶3, p. 1 (emphasis added).)  The EDR applies to:

> Except as it otherwise provides, this Agreement also applies, without limitation, to disputes with any entity or individual arising out of or related to the application for employment, background checks, privacy, the employment relationship or the termination of that relationship, trade secrets, unfair competition, compensation, classification, minimum wage, seating, expense reimbursement, overtime, breaks and rest periods, **termination, retaliation, discrimination or harassment and claims** arising under the Fair Credit Reporting Act, Defend Trade Secrets Act, **Civil Rights Act of 1964**, 42 U.S.C. §1981, Rehabilitation Act, Civil Rights Acts of 1866 and 1871, the Civil Rights Act of 1991, the Pregnancy Discrimination Act, Equal Pay Act, Americans With Disabilities Act, **Age Discrimination in Employment Act**, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act (except for claims for employee benefits under any benefit plan sponsored by the Company and (a) covered by the Employee Retirement Income Security Act of 1974 or (b) funded by insurance), Affordable Care Act, Genetic Information Non- Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, state statutes or regulations addressing the same or similar subject matters, **and all other federal or state legal claims arising out of or relating to your employment or the termination of employment (including without limitation torts and post-employment defamation or retaliation).**

(EDR, ¶3. (emphasis added).)   Further, the EDR covers "subsidiaries (collectively the "Company") or relationship with any of its agents, employees, affiliates, successors, subsidiaries, assigns or parent companies or termination of employment regardless of its date of accrual and survives after the employment relationship." (*Id.* at *¶1*.)

Significantly, the EDR is not a mandatory condition of employment and employees are allowed to submit a statement notifying the Company that they wish to opt out and not be subject to the agreement within 30 days of receipt of the EDR.  (*Id. at ¶3*.)  Moreover, the EDR makes

3

clear that its procedures do not prevent employees from filing a complaint with the appropriate state or federal agency, but that the EDR is the only way to proceed if the employee or former employee is not satisfied with the results of the government agency process. *(Id.)* ("Nothing in this Agreement prevents you from making a report to or filing a claim or charge with a government agency. . .".)  Further, the EDR is a mutual promise, and that both the employee and the Company are bound by the EDR. *(Id. at p.1.)*

The EDR makes clear that employment-related claims or disputes must be resolved in accordance with the rules and procedures set forth in the EDR, and the final step is binding arbitration.  The EDR provides for multiple internal reviews of an employee's claims to provide informal resolution.  (*Id*. at p.1). However, if the issue covers legally protected rights, the last step in the EDR is arbitration. *(Id.).*  The arbitration hearing is to be conducted by an outside and neutral arbitrator from the American Arbitration Association ("AAA").  *(Id.)*

## II.     PLAINTIFF'S EMPLOYMENT AND AGREEMENT TO THE EDR

Plaintiff was employed with OneMain and their predecessor corporations[1] from June 15, 1998 until her termination on October 6, 2017.  *(Complaint, Doc. 1 at ¶3.)* At the time of her termination, Plaintiff was serving as manager of the OneMain office located in Vicksburg, Mississippi. *(Id. at ¶3.)* Since 1998, Plaintiff has held various positions with OneMain and their predecessors. *(Id. at ¶3.)*   Beginning with her application for employment and routinely thereafter, Bowles agreed that any disputes related to her employment would be resolved through binding arbitration.  *(Application and prior Agreements dated 6/15/98, 10/21/98, 2/6/02, 1/12/04, 2/1/06, 12/1/08, 12/13/10, and 12/5/12, collective Att. "B-1" to Clotworthy Dec., Ex. "B.")*

---

[1] In November of 2015, Springleaf Holdings, Inc. purchased OneMain Financial Group, LLC from Citigroup. *(Declaration of Deborah Fleck, Ex. "A".)*  On November 16, 2015, Springleaf Holdings, Inc. changed its name to OneMain Holdings, Inc. and still owns OneMain Financial. *(Id.)*

4

Most recently, in 2016, OneMain communicated the Employee Dispute Resolution Certification for 2016 to the OneMain employees. *(Declaration of Steven Oberlie, Ex. "C"; Fleck Dec.)* As part of this process, OneMain's human resources office communicated the EDR to OneMain employees electronically and gathered electronic acknowledgment that the employees that the employees received, read and agreed to the terms of the Employee Dispute Resolution Program/Agreement. *(Id.)* In particular, on November 15, 2016 Plaintiff electronically accessed and signed a certificate representing that she had read and understood the EDR, and that by signing the form, she "certif[ied] that [she] carefully read the Employee Dispute Resolution Program/Agreement within and that [she] understand[s] and agree[s] to its terms." *(Id.)* Significantly, although Bowles had thirty days to opt out of the EDR, she never opted out of the EDR. *(Declaration of Martha R. Orlowicz, Ex. "D.")*

However, after filing a charge of discrimination with the Equal Employment Opportunity Commission and receiving a right-to-sue notice, Plaintiff filed the present action against Defendant in direct contravention to her contractual obligation to arbitrate all covered claims, including claims related to her employment with OneMain, which are the subject of this lawsuit.

Defendant requests that the Court grant this motion to compel arbitration and dismiss this action. Alternatively, Defendant requests that the Court stay the action pending outcome of the arbitration.

## **LEGAL ARGUMENT**

**I. Plaintiff Should be Compelled to Arbitrate Her Employment-Related Claims Against Defendant.**

The FAA governs the arbitration agreement between Plaintiffs and Defendants. The Federal Arbitration Act ("FAA") provides that private agreements to submit disputes to

arbitration are "valid, enforceable, and irrevocable" and requires courts to enforce them in the same manner they enforce all other contracts:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § § 1, 2; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25-26 (1991). In this case, Bowles agreed to arbitrate all employment related disputes with OneMain. The EDR provides that it is governed by the Federal Arbitration Act.[2]

Moreover, Plaintiff's employment relationship with OneMain involved interstate commerce. The FAA's reference to interstate commerce reflects Congressional intent to extend FAA coverage to the limits of federal power under the commerce clause. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 277-81 (1995). Accordingly, the determination of whether a transaction or contract "involves" interstate commerce requires an expansive construction of the term to effectuate Congress' goal of encouraging alternative dispute resolution mechanisms. *Id*. A matter "involves" commerce under the FAA if it simply "affects" commerce – a standard commonly applied by courts to situations in which it is clear that Congress intended to exercise its commerce clause powers to the fullest extent. *Id.* at 274. The United States Supreme Court reiterated all of the above points in *Circuit City v. Adams*, 532 U.S. 105 (2001).

---

[2] The FAA preempts any Mississippi common law rules regarding the enforceability of arbitration clauses. *Mays v. Nat'l Bank of Commerce*, No. 1:96CV8-D-D, 1998 WL 930627 at *1 (N.D. Miss. Nov. 20, 1998). However, even if the FAA did not apply and the arbitration agreement was governed by Mississippi common law, the result would be the same. Mississippi common law, like the FAA, strictly enforces arbitration agreements. *See IP Timberlands Operating Co., Ltd. v. Denmiss Corp.*, 726 So. 2d 96, 104 (Miss. 1998) ("[w]e expressly state that this Court will respect the right of an individual or an entity to agree in advance of a dispute to arbitration or other alternative dispute resolution").

OneMain operates over 1800 branch locations in 44 different states to provide consumer lending, credit insurance, and other credit related products to consumers. (*Fleck Decl., Ex. "A."*) OneMain also has multiple corporate centers including one in Evansville, Indiana, and another in Baltimore, Maryland. (*Id.*) OneMain also receives payments from individuals and vendors for its services from states all across the country. The operations of OneMain involve substantial interstate activity. (*Id.*) Given these facts, and applying the principles above, Plaintiff's employment with OneMain clearly constituted a "transaction" affecting interstate commerce. *See, e.g., Circuit City*, 532 U.S. at 113-19.

Congress enacted the FAA in 1925 to overrule the common law presumption that arbitration agreements were unenforceable. In so doing, Congress established a federal policy favoring arbitration of disputes, indeed, a "liberal federal policy favoring arbitration agreements." *Gilmer*, 500 U.S. at 25; *see Texaco Exploration v. Amclyde Engineered Prod.*, 243 F.3d 906, 909 (5th Cir. 1986) (citing *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). According to the Supreme Court, this policy is so deeply rooted that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Moses*, 460 U.S. at 24-25.

The FAA furthermore empowers parties and the Court to compel arbitration, specifically:

> A party aggrieved by the alleged failure … of another to arbitrate under a written agreement for arbitration may petition the United States district court which, save for such agreement, would have jurisdiction under Title 28 … for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.

This statutory provision further allows district courts to issue orders dismissing or staying proceedings in federal or even state court actions pending the outcome of arbitration. *See Moses*, 460 U.S. at 26-27; *Walton v. Rose Mobile Homes, LLC*, 298 F.3d 470, 473 (5th Cir. 2002).

Courts employ a two-step analysis to determine whether a party may be compelled to arbitrate: (1) whether there is a valid agreement to arbitrate the claims; (2) whether the dispute in question falls within the scope of the arbitration agreement. *Jones v. Halliburton Co*., 583 F.3d 228, 233-34 (5th Cir. 2009) (citing *JP Morgan Chase & Co. v. Conegie ex rel. Lee,* 492 F.3d 596, 598 (5th Cir.2007)). These requirements are easily satisfied here. Because, as shown below, Plaintiff's claims are subject to an enforceable arbitration agreement, the FAA is clear that these proceedings be dismissed or stayed pending arbitration.

### A.  A Valid Agreement to Arbitrate Exists.

Plaintiff entered into a valid and enforceable agreement to resolve these claims only in arbitration. Plaintiff was provided a copy of the Agreement and was given an opportunity to review. As an initial matter, although not required by the FAA or Mississippi law, the agreement with Plaintiff is in writing and electronically signed. *(Fleck Decl.; Oberlie Decl.)* Mississippi law expressly provides that electronic signatures such as Plaintiff's here are legally sufficient, valid and enforceable. *Blake v. Murphy Oil USA, Inc.*, 2010 WL 3717245 (N.D. Miss 2010). In *Blake*, Plaintiff argued that an arbitration provision was procedurally unconscionable because his signature was electronic. Presiding Judge Sharion Aycock rejected that argument holding that an electronic signature may not be denied legal effect or enforceability just because it is in electronic form. Furthermore, Mississippi has adopted the Uniform Electronic Transactions Act (UETA). See Miss. Code Ann §§ 75-12-1 to 75-12-39. The UETA provides that a "signature may not be denied legal effect or enforceability solely because it is in electronic form." See also

8

J.*M. v. Bailey*, 2010 Miss. App. LEXIS 417, * 12 (Miss. Ct. App. Aug. 3, 2010) (where party argued that a letter was unsigned, court held that the letter "did in fact bear an electronic signature"). Thus, Plaintiff's electronic signature cannot be denied legal effect or enforceability because it is in electronic form. *Id.*

Plaintiff electronically signed the valid and enforceable arbitration agreement and this entire matter should be compelled to arbitration as requested in Defendant's Motion. Indeed, United States District Court for the Southern District of Mississippi, as well as other federal courts, have routinely and consistently upheld the validity of OneMain's dispute resolution program to compel arbitration of employment discrimination claims. *See, e.g Dismuke v. OneMain Financial, Inc*., 2015 WL 4429280 at *4 (S.D. Miss. 2015); *Carroll v OneMain Financial Inc.,* 2015 WL 7717132, at *7 (E.D. Mich. 2015).

The EDR expressly provides that employment-related disputes raised in Plaintiff's complaint must be arbitrated. *(EDR, attached as Att. A-1 to Fleck Decl.)* Thus, in spite of any attempts Plaintiff may make to circumvent it, Plaintiff voluntarily and knowingly consented to arbitration as the sole means of resolving the employment claims she raises in this action. *(Fleck Decl.; Oberlie Decl; Clotworthy Decl.)*

Moreover, the EDR is not one-sided. Her employer agreed to submit all claims and disputes arising out of Plaintiff's employment or the termination thereof to final and binding arbitration. *(EDR, attached as Att. A-1 to Fleck Decl.)* Accordingly, enforcement of the EDR is further warranted because the obligation to arbitrate all claims is mutual and binding on all parties, so that neither party has gained an unfair advantage over the other by virtue of the EDR. Plaintiff's agreement should be enforced. Moreover, the EDR is not a mandatory condition of employment and employees are allowed to submit a statement notifying the Company that they

wish to opt out and not be subject to the agreement within 30 days of receipt of this agreement. (*EDR, ¶3.*)  Plaintiff did not opt out of the EDR.  *(Orlowicz Decl.)*

### B. Plaintiff's Claims are Covered Under the Agreement.

Under the strong federal policy favoring arbitration, it is well-settled that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24-25.  Thus, a court should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960).

Where, as here, a mandatory arbitration provision is broadly drafted, only an "express provision excluding a particular [claim] from arbitration . . . [or] the most forceful evidence of a purpose to exclude the claim from arbitration" will remove such a claim from consideration by an arbitrator.  *See AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).  Application of these principles mandates that Plaintiff be required to pursue all of her purported claims against OneMain through the EDR, not this Court.

The EDR expressly defines covered claims to include termination claims, claims for discrimination and state law claims related to her employment or termination of employment. (*EDR*.)  Therefore, Plaintiff's all claims raised by Plaintiff in her complaint are within the ambit of claims covered by the EDR, and this Court must compel Plaintiff to resolve her claims in the only manner to which Plaintiff and Defendant agreed - through arbitration.

### C. Plaintiff will have the same substantive rights in arbitration that she would have in Court.

As a final matter, the EDR does not deprive Plaintiff or Defendant of any substantive right or remedy that they would otherwise have in this Court. Rather, Plaintiff and Defendant

10

have "merely change[d] the forum where the dispute is resolved and the procedures to be followed." *Mitsubishi Motor Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). The Agreement should be enforced.

### II. The Court Should Dismiss These Proceedings Pending Arbitration Or, in the Alternative; Stay This Action.

Under the FAA, because the parties have agreed to arbitration, the court should dismiss this lawsuit with prejudice. *See Alford v. Dean Witter Reynolds, Inc.,* 939 F.2d 229, 230 (5th Cir. 1991) (affirming dismissal with prejudice of plaintiff's discrimination claims where all were subject to arbitration). Dismissal with prejudice is the appropriate remedy when all of the issues raised in the district court must be submitted to arbitration. *Id.* In fact, "the Fifth Circuit encourages district courts to dismiss cases with nothing but arbitrable issues because staying the action serves no purpose."3 *Armstrong v. Assocs. Int'l Holdings Corp*., 242 Fed. Appx. 955, 959 (5th Cir. 2007) (citing *Alford*, 975 F.2d at 1164). *See Hodges v. Coldwell Banker Real Estate Corp.,* No. 4:05cv168, 2007 WL 902812, at *2 (N.D. Miss. Mar. 22, 2007).

Alternatively, this Court must stay judicial proceedings where the issue presented is subject to arbitration under an agreement to arbitrate. 9 U.S.C. §§ 3, 4. Section 3 of the FAA states that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . .

---

3 A stay serves no purpose because "[a]ny post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law." *Alford*, 975 F.2d at 1164.

11

9 U.S.C. § 3.  This provision requires the trial court to stay judicial proceedings where the issue presented is subject to arbitration under an agreement to arbitrate.  The FAA leaves the trial court no discretion on this point; rather, it mandates that courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement exists.  9 U.S.C. §§ 3, 4.

Here, where <u>all</u> of the claims raised by Plaintiff in this lawsuit fall within the scope of a valid and enforceable arbitration agreement, the Complaint should be dismissed.  Significantly, dismissal will not operate to prejudice the parties' legal rights since either party may return to this Court to seek judicial review of any arbitration award pursuant to the provisions of the FAA.  For these reasons, Defendant submits that this Court should dismiss Plaintiff's claims, which are clearly covered by a valid and enforceable agreement to arbitrate. Alternatively, the Court should stay the instant action pending arbitration of Plaintiff's claims.

### III.   Conclusion

For all of these reasons, Defendant requests that the Court enter an Order dismissing this case with prejudice and compelling arbitration of all of Plaintiff's claims.  Defendant further requests its costs and attorneys' fees associated with this Motion be assessed against Plaintiff, and such other relief as the Court deems appropriate.

This the 23rd day of February, 2018.

        **ONEMAIN FINANCIAL GROUP, LLC**

        By:  /s/ *Robin Banck Taylor*
           Robin Banck Taylor (MS Bar No. 100195)
           robin.taylor@ogletreedeakins.com
           Ogletree Deakins Nash Smoak & Stewart, P.C.
           207 West Jackson Street, Suite 200
           Ridgeland, Mississippi 39157
           Telephone:  (601) 360-8444
           Facsimile:  (601) 360-0995

        **ATTORNEY FOR DEFENDANT**

## **CERTIFICATE OF SERVICE**

I, Robin Banck Taylor, do hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the ECF system on February 23, 2018, which sent notification of such to the following:

Bailess & Rector, LLP
Kenneth B. Rector
P.O. Box 991
Vicksburg, MS 39181

**ATTORNEY FOR PLAINTIFF**

/s/ *Robin Banck Taylor*
Robin Banck Taylor

32874350.1